IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| BOBBY K. ANDERS,        ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.                      ) | CIVIL ACTION NO. 5:07-CV-1507-KOB |
| ) | |
| MICHAEL J. ASTRUE,      ) | |
| **Commissioner of the Social Security** ) | |
| **Administration**          ) | |
| ) | |
| Defendant.    ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Bobby K. Anders, filed an application for disability insurance benefits on May 31, 2005, alleging a disability onset date of December 21, 2004 caused by back ailments and arthritis. (R. 23-24). The Commissioner of the Social Security Administration denied the application (R. 33-37), and on August 12, 2005, the claimant timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. 25). The ALJ held a video hearing on December 12, 2006. (R. 180). The ALJ found that the claimant failed to establish a disability on or prior to the ALJ's March 5, 2007 hearing decision. (R. 10-17). The ALJ then concluded that the claimant was not disabled within the meaning of the Social Security Act. (*Id.* at 17). The claimant timely requested review of the hearing decision by the Appeals Council. (R. 6). The Appeals Council found no basis for review of the ALJ's decision and denied the claimant's request on June 14, 2007, rendering the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (R. 3-5). The claimant has exhausted his administrative remedies, and sought

1

judicial review pursuant to this court's jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be REVERSED and REMANDED for further proceedings.

## II.  Issues Presented

In this appeal, the claimant alleges that the ALJ's decision is not supported by substantial evidence and is inconsistent with applicable law. In particular, the claimant argues that the ALJ improperly gave no weight to an opinion of the claimant's treating physician and that, although the ALJ concluded that the claimant met the Eleventh Circuit pain standard, he improperly disregarded the claimant's subjective complaints and testimony.

## III.  Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not

only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV.  Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted on or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

When a claimant's offers subjective testimony of pain or other symptoms, that testimony is sufficient evidence of an alleged disability when it satisfies this Circuit's three-part pain standard and is not properly discredited by the ALJ.  The pain standard requires: (1) evidence of

an underlying medical condition; and (2) *either* (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ decides not to credit subjective testimony, he must discredit it explicitly and should articulate explicit adequate reasons for discrediting; failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *see also Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

When a claimant offers the opinion of a treating physician in support of his claims, the ALJ must ordinarily give that opinion substantial or considerable weight, unless good cause is shown to the contrary. *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1983). *See also Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner may not discount the treating physician's opinion. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1986).

As stated above, this court must affirm the Commissioner's decision if the ALJ applied the correct legal standard and substantial evidence supports his decision.

### V.  Facts

The claimant was forty-one years old at the time of the administrative hearing and is a high school graduate. (R. 184, 190).  His past work experience consists of employment as a delivery route truck driver. (R. 204).  According to the claimant, he became disabled on December 21, 2004 caused by back ailments and arthritis. (R. 23-24).  The claimant testified that he worked in the early months of 2005 performing carpentry trim work for his cousin, but has been unemployed since then. (R. 192).

The claimant testified that he injured his back in approximately 2001 and continued to work under increasingly aggravated pain until the alleged onset date, when he "couldn't do the job [any] more." (R. 187).  Although the claimant has received surgical treatment, the claimant testified he experiences relatively constant back pain radiating into his right leg at an average level of eight on a ten-point scale. (R. 194).  This pain causes him occasionally to stagger when he tries to walk and to lose his balance. (R. 187).  He further testified that his pain requires him to lie down two or three times during the day. (R . 188, 195).  He also has problems gripping because of  numbness in his right hand and arm.   (R. 187-88, 196).

Records from The Spine and Neurosurgery Center in Huntsville, Alabama show that Dr. Joel Pickett initially examined the claimant on November 21, 2001 at the referral of Dr. Samuel J. Ribis.  Treatment notes indicate that the claimant presented a ten-year history of lower back and bilateral leg pain that had been worsening since the Fall of 2001, and that Dr. Pickett referred the claimant for a lumbar MRI. (R. 145).  The MRI, interpreted by Dr. Douglas Sutherland at BioImaging of Hunstville, Inc., found that the claimant suffered from a moderate to large left disc herniation at the L4-5 disc with extrusion of disc material superiorly behind the L4 vertebral

body, producing moderate to severe central canal stenosis and mild to moderate left neural foraminal narrowing and a mild disc desiccation at the L5-S1 disc with mild diffuse broad-based bulge. (R. 154). Upon review of the MRI findings on November 29, 2001, Dr. Pickett suspected that the claimant would eventually require surgery for the relief of his discomfort. (R. 144). Treatment records dated November 30, 2001 and January 7, 2002 show that the claimant reported essential resolution of his pain issues with conservative treatment (R. 142-43); Dr. Pickett noted the claimant's return to work, and released him to light duty. (R. 142).

In early 2002, Dr. Pickett referred the claimant to Dr. Collins for pain management injections. (R. 106-23). Dr. Ronald L. Collins administered seven treatments for the claimant's lumbar radiculopathy from February 12, 2002 to June 13, 2003. (*Id.*).

On July 28, 2003, Dr. Pickett noted an increase in the claimant's pain, despite conservative therapy and the injection treatments. (R. 141). The claimant visited Dr. Pickett on August 6, 2003 to receive the results from a CT scan, which revealed broad-based disc protrusion, ligamentous and facet hypertrophy, and bilateral foraminal and lateral recess stenosis. (R. 140). Dr. Pickett discussed treatment options with the claimant, who chose to proceed with surgical treatment, as conservative epidural steroid injection treatment provided only temporary relief from pain. (*Id.*). Records show that Dr. Pickett performed a microdiscectomy, foraminotomy, microlaminotomy, and discectomy at the L4-5 disc on the claimant at Huntsville Hospital on August 13, 2003. (R. 137-39).

Following the claimant's spinal surgery, Dr. Shelinder Aggarwal, a pain management physician in Hunstville, treated the claimant during the period of January 26, 2004 to August 3, 2004. (R. 125-35). During the initial evaluation on January 26, 2004, Dr. Aggarwal noted that,

although the claimant's back surgery helped temporarily, he experiences pain resulting in an average level of discomfort of eight on a ten-point scale; aggravating factors include bending, lifting, and sitting or standing for prolonged periods of time, while alleviating factors include rest and medication. (R. 133).  Dr. Aggarwal noted a 25% limitation to range of motion in all planes and increased pain with extension and lateral rotation, and found the claimant suffered from post-back surgery chronic low back pain with lumbosacral radiculitis. (R. 134-35).  The claimant received injection therapy on March 16, 2004 and April 15, 2004. (R. 129-32).  At the April 15 visit, Dr. Aggarwal suspected possible carpal tunnel syndrome based on the claimant's complaints of numbness and tingling in both hands and suggested evaluative studies. (R. 129-30).  An electromyography and nerve conduction study completed on May 18, 2004 concluded that the claimant has mild carpal tunnel syndrome, for which Dr. Aggarwal prescribed supportive hand splints. (R. 127-28).  On August 3, 2004, claimant received injection therapy; Dr. Aggarwal noted an impression of chronic low back pain with lumbosacral radiculitis and lumbar facet syndrome. (R. 125-26).  An MRI study ordered by Dr. Aggarwal and interpreted by Dr. Robert T. Smith, on August 4, 2004 showed post-operative changes at the L4-5 disc and degenerative changes at the L5-S1 disc and lower apophyseal joints. (R. 124).

     Upon discharge from Dr. Aggarwal's treatment, the claimant began a pain management program with Dr. Brian Carter of The Orthopaedic Center in Huntsville on September 28, 2004. (R. 175-78).  At the initial evaluation, Dr. Carter noted normal cervical and thoracic ranges of motion, tenderness and tightness across the paraspinal muscles, a decreased range of lumbar motion with extremes of flexion and extension, and positive straight leg raise and slump tests on the right side, unrelieved by neck extension maneuvers; Dr. Carter noted an impression of post

laminectomy syndrome and lumbar spondylosis. (*Id.*).  Dr. Carter completed an electromyography and nerve conduction study on October 11, 2004, which showed no remarkable findings, except a bordeline H-reflex prolongation on the right side. (R. 173-74).  On October 19, 2004, the claimant underwent injection therapy and a fluoroscopy. (R. 171-72).  On November 2, 2004, Dr. Carter noted improvement with injection therapy and recommended that the claimant continue conservative medicinal treatment and participate in home therapeutic exercises. (R. 169-70).  Dr. Carter saw the claimant for follow-up examinations on December 28, 2004, March 4, 2005, and June 1, 2005, during which the claimant reported some increase in pain (possibly due to changes in the weather), and Dr. Carter made no new findings and recommended continued chronic pain management. (R. 163-68).  On September 9, 2005, the Orthopaedic Center completed a Clinical Assessment of Pain on behalf of the claimant. (R. 161-62).  The assessment contains the following opinions: pain is present to such an extent as to be distracting to the claimant's adequate performance of daily activities or work; physical activity (such as walking, standing, bending, stooping, moving of extremities, etc.) can greatly increase the claimant's pain to such a degree as to cause distraction from or total abandonment of task; pain and/or drug side effects can be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention, drowsiness, etc; treatments for pain have been used quite successfully in the claimant's case. (*Id.*).  The claimant was seen for follow-up evaluations on March 16, June 14, and September 13, 2006. (R. 155-60).  On March 16, 2006, Dr. Carter noted findings of chronic radicular changes and moderate tenderness and tightness across the paraspinal muscles with normal extremity and thoracic ranges of motion. (*Id.* at 159).  On June 14 and September 13, 2006, Dr. Carter noted that tenderness and tightness across the lumbar

paraspinal muscles was worse on the right. (R. 155-58). At each of the 2006 visits, Dr. Carter cautioned the claimant against driving or operating heavy machinery while on his prescribed pain medications. (R. 156, 158, 160).

The ALJ found that the medical evidence indicated that the claimant has lumbar spondylosis and a history of laminectomy, qualifying impairments that are "severe" under 20 C.F.R. § 404.1520(c), but not "severe" enough to meet or medically equal one of the impairments listed in 20 C.F.R. Part pt. 404, subpt. P., and App. 1. (R. 12-13). The ALJ considered "the entire record" to determine that the claimant has the residual functional capacity ("RFC") to perform work at the light level of exertion with a sit/stand option subject to the following limitations: only occasional use of the right arm and leg for pushing, pulling, or occasional balancing, stooping, kneeling, crouching, or crawling, frequent use of the left arm and leg for pushing, pulling, or reaching overhead, only occasional exposure to extreme cold, heat, wetness, humidity, or vibration, and no exposure to dangerous machinery or work in high, unprotected places. (R. 13).

The ALJ found that the claimant's subjective allegations meet the Eleventh Circuit's pain standard, but that the claimant's medically determinable impairment would not reasonably be expected to produce the alleged intensity, persistence, and limiting effects of the symptoms alleged. (R. 14). The ALJ also found the claimant's testimony of severity and limitation to be inconsistent with and unsubstantiated in the record. The ALJ found the claimant's testimony of manipulative limitations to be both unsupported by medical evidence and inconsistent with his claimed daily activities; the ALJ found the claimant's testimony that he must lie down during the day and occasional staggering and falling over to be unreported to doctors in the record. (R. 15).

The ALJ gave little weight to the opinion of the State agency medical consultants, who determined that the claimant could perform his past relevant work as a truck driver. (*Id.*). The ALJ gave no weight to the September 9, 2005 Clinical Assessment of Pain form because it "contains neither comments nor objective evidence and is otherwise inconsistent with the evidence of record." (*Id.*).

The ALJ considered whether the claimant's RFC permitted the performance of his past relevant work ("PRW"). Patsy B. Bramlett, an impartial vocational expert ("VE"), testified at the administrative hearing. (R. 203-07). The VE opined that the claimant acquired no transferrable skills in his work as a delivery route truck driver. (*Id.* at 203). The ALJ asked the VE to consider whether a hypothetical individual with the same capacity and limitations of the claimant could perform the claimant's PRW as a delivery route truck driver. (R. 205). The VE responded that the claimant's PRW would be precluded, because *Dictionary of Occupational Titles* classifies it as medium in exertional level. The ALJ also asked whether such a hypothetical person could perform other work in the national economy. The VE responded that unskilled, light jobs were available to the claimant within the RFC parameters as determined by the ALJ, including work as a laminating machine tender, inspector, or press machine tender. (R. 205-06). The VE estimated that those three jobs existed in a number of approximately 1,800 in the state and 99,000 nationally. (R. 206).

The claimant's counsel then questioned the VE and asked whether an individual of the claimant's age, education, and similar PRW with a need to lie down throughout the day would be unable to perform those jobs enumerated in response to the ALJ's hypothetical question; the VE answered that all jobs would be impossible with such a limitation. (R. 207). Counsel then asked

whether an individual experiencing chronic pain at a level of eight on a ten-point scale could perform light work in the national economy, to which the VE responded that the foreseeable "[e]ffects of that pain level would rule out all jobs." (*Id.*). Counsel also asked whether an individual limited to only occasional use of the right hand could perform the enumerated jobs; the VE responded that only work as a laminating machine tender would be precluded by such a limitation, as work as an inspector or press tender requires no hand use. (*Id.*).

The ALJ concluded that the claimant's RFC precluded his PRW, but that he could perform work in the national economy at the light level of physical exertion, subject to additional limitations (R. 16); the ALJ based his conclusion that the claimant could perform work in the national economy on the testimony of the VE. (R. 17). The ALJ noted that the claimant's capability to make a successful adjustment to other work existing in significant numbers in the national economy warranted a finding of "not disabled." The ALJ ultimately found that the claimant had not been under a disability, as defined in the Social Security Act, at any time from December 21, 2004 to the date of the decision.

### VI.   Discussion

The ALJ followed the five-step sequential evaluation process for determining whether the claimant is "disabled" under the Social Security Act, ultimately determining at the end of the fifth step that the claimant is not disabled as defined by the Act. (R. 17). This court must affirm the decision of the Commissioner as to the claimant's disability benefits application if the decision is supported by substantial evidence and the ALJ applied the correct legal standards. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997) (holding that a decision by the Commissioner will not be

disturbed if, in light of the record as a whole, it appears to be supported by substantial evidence). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The claimant alleges that the ALJ improperly gave no weight to the opinion of Dr. Carter, the claimant's treating physician. The opinion of a treating physician must ordinarily be given substantial or considerable weight, unless good cause is shown to the contrary. *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1983). *See also Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner may not discount the treating physician's opinion. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1986).

Dr. Brian Carter, at The Orthopaedic Center in Huntsville, Alabama, treated the claimant from September 28, 2004 through September 13, 2006. (R. 155-78). The claimant produced as evidence a Clinical Assessment of Pain form returned from Dr. Carter's office and dated September 9, 2005. (R. 161-62). A Clinical Assessment of Pain form ("Form") requests a treating physician's estimate of the degree of pain suffered by his or her patient. (R. 161). The Form contains the following opinions: pain is present to such an extent as to be distracting to the claimant's adequate performance of daily activities or work; physical activity (such as walking,

standing, bending, stooping, moving of extremities, etc.) can greatly increase the claimant's pain to such a degree as to cause distraction from or total abandonment of task; pain and/or drug side effects can be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention, drowsiness, etc; treatments for pain have been used quite successfully in the claimant's case. (R. 161-62).  The ALJ found that the Form "contains neither comments nor objective evidence and is otherwise inconsistent with the evidence of record" and gave the Form no weight. (R. 15).

      The ALJ did not adequately articulate his reasoning for giving the Form no weight.  First, the ALJ cites the Form's lack of comments or objective evidence. (R. 15).  Relying on these deficiencies, the ALJ ignores the nature of the Form.  A Clinical Assessment of Pain intends to solicit a treating physician's opinions of his or her patient's pain.  The Form concedes the highly subjective nature of pain and difficulty in measuring pain, but notes that "it is possible for the treating physician to estimate the degree of pain that is present in a particular instance, given the nature of the impairment, and the extent to which a patient expresses the presence of pain and requests medication for its relief."  Treating physicians are asked to answer a series of questions "as they relate to the patient . . . according to [his or her] best clinical judgment in [a] case," and complete the form by choosing the most applicable estimate from a series of statements regarding a patient's pain and its foreseeable limitations. (R. 161).  As the Form seeks an estimate based upon a physician's opinion as a patient's treating source, it requires no explanatory comments or substantiating medical findings.  The absence of comments or objective evidence in the Form has no effect on its validity, and, thus, is not sufficient reasoning in support of the ALJ's discrediting of the evidence.

The ALJ also concluded that the Form and the evidence of record are inconsistent. (R. 15). The ALJ cited as support Dr. Carter's treatment notes dated June 1, 2005[1] and noted no remarkable findings; the ALJ noted that the Form was completed following the June 1, 2005 appointment and implies inconsistency between the findings of Dr. Carter during the claimant's visit and the estimates contained in the Form. (*Id.*).

All records of treatment by Dr. Carter show that he performed a physical examination on the claimant, which he divided into sub-categories in the report of findings. The categories of physical examination include: general, "HEENT" (head, eyes, ear, nose and throat), gait, cervical, thoracic, lumbar, myofascial, extermities, neurological, pulses, and skin examinations; in addition, each report contains a general note containing, for example, the claimant's complaints and overview of treatment history, as well as a section containing Dr. Carter's impressions of the claimant and prescribed treatments. (R. 155-78). The findings cited by the ALJ are the results of Dr. Carter's general, gait, cervical, and neurological physical examinations of the claimant on June 1, 2005. (R. 163-64). The ALJ concluded that the results of these portions of the physical examination were inconsistent with the conclusions contained in the Form, and subsequently gave the Form no weight. (R. 15).

The ALJ's conclusion that the Form is inconsistent with the evidence of record is not supported by substantial evidence. Although the decision cites to *portions* of Dr. Carter's physical examination of the claimant – on June 1, 2005 (R. 15) and in general throughout the

---

[1] The ALJ incorrectly referred to June 1, 2005 as, and attributed the findings to, the claimant's last treatment with Dr. Carter. (R. 15). The record shows that the claimant continued treatment with Dr. Carter through September 13, 2006. (R. 155). The Commissioner concedes to the ALJ's error. (Def. Br. 11). The court considers the findings cited as the ALJ's reasoning, but does not consider the temporal inconsistency implied in the decision.

treatment relationship (R. 14-15) – the ALJ failed to properly consider additional portions of Dr. Carter's treatment records, including the HEENT, lumbar, myofascial, extremities, and skin physical examinations, the notations of the claimant's complaints, and Dr. Carter's overall impressions and treatment recommendations.  Particularly, the ALJ concluded that the claimant suffered from back ailments, including lumbar spondylosis and a history of laminectomy (R. 12), but failed to acknowledge Dr. Carter's findings of the claimant's lumbar physical examinations in the decision.  Although the ALJ articulated a specific reason for giving the Form no weight, the reason – inconsistency with the medical evidence of record (R. 15) – is not properly supported because the ALJ failed to consider the totality of the evidence of record from the claimant's treating physician, Dr. Carter.  On remand, the ALJ should reconsider the evidence of record from the claimant's treatment with Dr. Carter to determine what effect, if any, the remaining findings of record have on the weight of the evidence.  The ALJ should particularly reconsider the results of Dr. Carter's lumbar physical examination findings, given the nature of the claimant's complaints and recognized impairments.

     Additionally, the ALJ committed reversible error in failing to state with particularity the weight given to different medical opinions and the reasons therefor.  The record contains evidence from multiple treating medical sources.  The ALJ's decision cites to evidence from Dr. Pickett and Dr. Carter, which, as discussed above, was not properly considered in its entirety.  Although the ALJ states that he carefully considered all evidence (R. 10), the decision contains no mention of evidence of record from either Dr. Collins or Dr. Aggarwal – both treating physicians whose evaluations must be accorded substantial weight absent good cause to the contrary. *See Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (holding that the ALJ's

statement that he considered all evidence is insufficient where he does not indicate what weight was accorded to the evidence considered). The omission of the medical records of Dr. Aggarwal is particularly erroneous, as Dr. Aggarwal treated the claimant for pain management immediately prior to his treatment by Dr. Carter; in fact, Dr. Carter only began treating the claimant subsequent to his discharge from Dr. Aggarwal's clinic. On remand, the ALJ must consider the medical opinions of Drs. Pickett and Aggarwal and state with particularity the weight accorded to the opinions and the reasons for so weighing. *See Sharfarz*, 825 F.2d at 279; *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (holding that the ALJ has a duty to make clear the weight accorded to *each* item of evidence and the reasons for his decision. A statement that the ALJ carefully considered all evidence is not sufficient).

The claimant also alleges that the ALJ improperly discounted the claimant's testimony of his pain and physical limitations. A claimant's subjective testimony of pain or other symptoms is sufficient evidence of an alleged disability when it satisfies this Circuit's three-part pain standard and is not properly discredited by the ALJ. The pain standard requires: (1) evidence of an underlying medical condition; and (2) *either* (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ decides not to credit subjective testimony, he must discredit it explicitly and should articulate explicit adequate reasons for discrediting it; a failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *see also Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)

(holding that the articulation of reasons for refusing to credit a claimant's testimony must be supported by substantial evidence). A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by this court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The ALJ found that the claimant satisfied the pain standard because "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms," but determined that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (R. 14). The ALJ concluded that the claimant's complaints of the effects of his pain were unsubstantiated by objective evidence; the ALJ noted that the claimant "lives independently, goes to the grocery store, visits friends, drove to the [administrative video] hearing, and smokes a pack per day of cigarettes." The ALJ opined the claimant's daily activities were inconsistent with his testimony. (R. 15). Participation in daily activities for short durations does not necessarily disqualify the claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Because the ALJ did not properly consider the evidence of record, as discussed above, his conclusion that the claimant's testimony is not supported by the evidence of record is not supported by substantial evidence. On remand, the ALJ must determine what effect, if any, the weight of the evidence has on the credibility of the claimant's subjective allegations of pain and its limiting affects.

## VII. Conclusion

For the above reasons, the court finds that the ALJ failed to properly consider the evidence of record, and his decision is not supported by substantial evidence. Therefore, the court will reverse the Commissioner's decision and will remand to the Commissioner for the

ALJ to re-assess the totality of the evidence and its effect, if any, on the claimant's credibility and to determine whether the claimant is entitled to Disability Insurance Benefits.

    Dated this 30th day of June, 2008.

                                                                          KARON OWEN BOWDRE
                                                                          UNITED STATES DISTRICT JUDGE